UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD EUGENE WILLIAMS,

    Plaintiff,     Case No. 2:19-cv-10283
            District Judge David M. Lawson
v.          Magistrate Judge Anthony P. Patti

ANDREOPOULOS & HILL, *et al*.,

    Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT THE PENDING MOTIONS TO DISMISS (ECF Nos. 29, 35, 48, 50, 53, 55)

**I. RECOMMENDATION:** The Court should **DENY** the pending motion to dismiss filed by several Defendants associated with the law firm of Andreopoulos & Hill (ECF Nos. 48) but should **GRANT** the pending motions to dismiss filed by Defendants Gershel and Bullington (ECF No. 29), Defendant Diaz and/or the Michigan Head and Spine Institute (ECF No. 35, 50), and Defendant Colombo (ECF Nos. 53, 55).

**II. REPORT:**

 **A. Background**

  Edward Eugene Williams is currently incarcerated at the Alabama Department of Corrections (ADOC) Staton Correctional Facility on a matter

unrelated to the case at bar.  (ECF No. 11.)  By way of background, it seems that he was involved in a motor vehicle accident in Michigan on January 29, 2009. (ECF No. 13, PageID.48; ECF No. 20, PageID.70 ¶ 2, 72 ¶ 4.)  In February 2009, Plaintiff was referred to Andreopoulos & Hill.  (ECF No. 13, PageID.49.)

In October 2009, Williams – seemingly via counsel (Lambros L. Andreopoulos) – filed a civil lawsuit in state court against Christopher Joseph Roebuck and Philadelphia Indemnity Insurance Company.  *See* Case No. 09-025727-NZ (Wayne County Circuit Court).  In May and June 2010, Dr. Diaz performed surgeries on Plaintiff's neck, and corrective surgery for his back was to be scheduled for January 2011.  (ECF No. 13, PageID.49.)  However, in October 2010, Plaintiff went to Birmingham, Alabama "to visit his relatives[,]" and, while there, "was charged with four crimes."  (*Id.*, PageID.49-50.)

Plaintiff claims that his deposition took place in April 2012 at the Jefferson County Jail in Birmingham, Alabama.  (ECF No. 13, PageID.50.)  In June 2012, the civil lawsuit was settled, and Judge Wendy M. Baxter entered an order of dismissal.  Judgment was entered on November 5, 2012.  (ECF No. 21, PageID.87-90; ECF No. 67, PageID.401-406 [Register of Actions]; *see also* ECF No. 20, PageID.70-73 [Exhibits].)

Williams alleges that "Defendant . . ." without further specification ". . . settle[d] both cases without my knowledge and consent July 13, 2012 and

2

December 2012."  (ECF No. 1, PageID.9 [Statement of Claim]; *see also id*.,
PageID.11-13.)  Plaintiff's reference to "both cases" appears to be "the default
claim" and "the offender's claim."  (ECF No. 1, PageID.13.)  Perhaps these are
references to the state court defendants – Philadelphia Indemnity Insurance
Company and Christopher Joseph Roebuck.

In any event, Plaintiff claims he was sent to the Alabama Department of
Corrections in 2014.  (ECF No. 13, PageID.50.)  A disbursement sheet dated
January 8, 2016 lists the settlement amount as $48,500.00, from which the
following deductions were to take place:  (1) $6,506.00 in costs; (2) $13,998 in
attorney fees; (3) $10,406 for Midwest Health Plan's lien; and, (4) a combined
$17,590 for Greenfield Rehab and United Transportation's lien(s).  Thus, the net
disbursement was $0.00.  (ECF No. 21, PageID.77.)  Andreopoulos & Hill,
P.L.L.C. sought approval for disbursement; however, instead of signing the form,
Plaintiff "refuse[d] proposed settlement[,]" (ECF No. 21, PageID.76-78; *see also*
ECF No. 67, PageID.391), elsewhere referred to as his refusal to "sign the default
arbitration agreement . . . [,]" (ECF No. 13, PageID.50-51).

In April 2018, Plaintiff completed a Michigan Attorney Grievance
Commission (AGC) "Request for Investigation (R/I) Form," which appears to have
been received by the AGC on April 17, 2018.  (ECF No. 21, PageID.85.)
Thereafter, Plaintiff received the following correspondence:

3

- On May 3, 2018, Wayne County Clerk Clerical Specialist Scales provided Plaintiff with a copy of the Register of Actions in Case No. 09-025727-NZ.  (ECF No. 67, PageID.394, 400, 401-406; ECF No. 21, PageID.87-90.)

- On May 4, 2018, Chief Judge Colombo's clerk wrote to Plaintiff to let him know that his motion for waiver of fees was incomplete.  (ECF No. 21, PageID.79.)

- On May 25, 2018, Wayne County Clerk Clerical Specialist Scales wrote to Plaintiff with direction as to his second request letter.  (ECF No. 21, PageID.80.)

Moreover, on May 24, 2018, AGC Assistant Deputy Administrator Bullington explained, *inter alia*, that the AGC "cannot initiate action against a law firm[,]" and that "you must provide a detailed statement of your complaint as to each attorney."  (ECF No. 77, PageID.460 [AGC File No. 18-1202].)

Williams completed another Michigan AGC "Request for Investigation Form" on June 13, 2018, which appears to have been received on July 16, 2018. (ECF No. 67, PageID.399; ECF No. 21, PageID.84.)  At or around the same time, Plaintiff sent Michigan's AGC and Chief Judge Colombo a "power of attorney," seemingly in an effort to access his legal records in order to "protect his interest or debt rendered for medical reason(s) . . . ."  (ECF No. 67, PageID.397; *see also id*., PageID.378-379.)  According to Plaintiff, this would "allow them to receive the request[ed] actions . . ." from Wayne County Circuit Court.  (ECF No. 13, PageID.51.)

Plaintiff attests that, in November 2018, he spoke with a paralegal at Andreopoulos & Hill and was told that he "owed over six thousand dollars . . . and[,] when [he pays] that loan amount, they w[ill] send the paper work [he] requested." (ECF No. 13, PageID.52.)

## B.   Instant Lawsuit

Williams filed the instant matter *in pro per* on January 29, 2019 against a multitude of Defendants, most of whom are described as associated with Andreopoulos & Hill, P.L.L.C.'s law office. (ECF No. 1, PageID.1-6.) Additionally, Plaintiff names: (1) Fernando G. Diaz, M.D. of the Michigan Head and Spine Institute (MHSI);[1] (2) now-retired Chief Judge Robert J. Colombo, Jr. of Wayne County Circuit Court; (3) Alan M. Gershel of Michigan's AGC; (4) Cynthia C. Bullington of Michigan's AGC; (5) Robert Hammer of Philadelphia Insurance Company; and, (6) Rhonda Raines of ADOC's central records. (ECF No. 1, PageID.6-7.)

---

[1] Plaintiff lists Defendant No. 21 as "Michigan Head and Spine Institute" / neuro-surgeon "Fenandez Dezes." (ECF No. 1, PageID.6.) When docketing this case, the Clerk of the Court listed this Defendant as "Fernandez Dezes, Doctor, Michigan Head and Spine Institute." However, the appearances of counsel and a curriculum vitae identify this individual as Fernando Diaz, M.D. (ECF Nos. 34, 35-1, 49, 50-1.)

### C.    Pending Dispositive Motions

Judge Berg referred this case to me for all pretrial proceedings, which was renewed by Judge Lawson upon reassignment of the case to him.  (ECF Nos. 18, 26.)  On April 12, 2021, Plaintiff filed motions for entry of default judgment as to Defendant Hammer – who seems to be a claims specialist at Philadelphia Insurance Companies – and Awada – who seems to be a chiropractor.  (ECF Nos. 73, 74; *see also* ECF Nos. 75, PageID.443.)  By way of a separate report, the Undersigned has recommended that the Court deny these motions.  (ECF No. 75.)

The instant report and recommendation concerns Defendants' pending motions to dismiss, namely:

1.    Defendants Gershel and Bullington's motion to dismiss (ECF No. 29);

2.    Defendant Diaz's motion to dismiss (ECF No. 35) and amended motion to dismiss (ECF No. 50), which is also brought on behalf of the Michigan Head and Spine Institute;

3.    Defendants Andreopoulos & Hill PLLC, et al.'s motion to dismiss (ECF No. 48); and,

4.    Defendant Colombo's motion to dismiss (ECF Nos. 53, 54, 55).

Along the way, the Court entered orders requiring a response, each of which set a deadline.  (ECF Nos. 36, 51, 59.)  However, on March 5, 2021, I entered an order granting in part and denying in part Plaintiff's February 4, 2021 motion (ECF No. 60), to the extent it sought an extension of time within which to file a response to

6

the pending motions to dismiss, and set the deadline for April 9, 2021.  (ECF No.

61.)

On March 18, 2021, Plaintiff filed what appears to be a combined response.

(ECF No. 67.)  He references his December 2020 exhibits (ECF No. 33), but these

were stricken on March 5, 2021 (ECF No. 61).  (ECF No. 67, PageID.374, 376,

382.)  Only Defendants Colombo, Bullington and Gershel have filed a reply.  (ECF

No. 68, 70.)

Plaintiff filed a March 18, 2021 motion for an extension of time to respond

(ECF No. 65), to which the AGC Defendants objected (ECF No. 70).  The Court

denied this motion on May 12, 2021.  (ECF No. 76.)

### D.    Standard

In some places, Plaintiff's response refers to "summary judgment."  (*See*,

*e.g.*, ECF No. 67, PageID.358-359.)  To be clear, the motions at bar do not seek

summary judgment under Fed. R. Civ. P. 56; they seek dismissal under Fed. R.

Civ. P. 8(a)(2) and/or Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss

under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the

complaint in the light most favorable to plaintiff and accept all allegations as true."

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed

factual allegations," but it must contain more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action"). Facial plausibility is

established "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of

considerations, including common sense and the strength of competing

explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v.

Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

### E.    Discussion

Preliminarily, I note that Plaintiff seems to offer 28 U.S.C. § 2244 ("Finality

of determination"), 28 U.S.C. § 2254 ("State custody; remedies in Federal courts"),

and 28 U.S.C. § 2255 ("Federal custody; remedies on motion attacking sentence")

as bases for the relief he seeks in this Court.  (ECF No. 1, PageID.12-13.)

However, 28 U.S.C. §§ 2241-2256 concern "habeas corpus," which does not seem

to apply to Plaintiff's current dispute, as this case does not concern the validity of

the criminal conviction for which he is currently incarcerated.  Moreover, while

Plaintiff's reliance upon 42 U.S.C. § 1983 ("Civil action for deprivation of rights")

*could be appropriate* here, where Plaintiff challenges the resolution of his state

court civil case, Plaintiff has alleged diversity of citizenship (28 U.S.C. § 1332) –

not federal question (28 U.S.C. § 1331) – as a basis for this Court's jurisdiction.

(ECF No. 1, PageID.8-9.)

### 1.    The operative pleading

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

As noted above, Plaintiff sets forth a brief "Statement of Claim" – "Defendant settle[d] both cases without my knowledge and consent July 13, 2012 and December 2012." (ECF No. 1, PageID.9; *see also* ECF No. 13, PageID.51-52.) Thus, the root of this lawsuit involves an alleged breach of contract.

In the remainder of his complaint and in a subsequently filed affidavit, Plaintiff provides further detail. (*Id*., PageID.11-13, 48-52.) Specifically, Plaintiff alleges that the attorneys of Andreopoulos & Hill PLLC:

> . . . settled the claim and case July 13, 2012 and December 2012 without [Plaintiff's] knowledge (or) arbitration consent and deliberately withheld what process took place and sent the Plaintiff a late arbitration of the default claim to the [ADOC]. Plaintiff refused. Plaintiff [sought] knowledge of what process had taken place[][,] and counsel refuse[d] to speak (or) respond by mail.

(ECF No. 1, PageID.12.) Seemingly with reference to the negotiations with Christopher Joseph Roebuck, Plaintiff claims that his counsel did not give him "notice to withdraw (or) work to satisfy [Plaintiff's debt][,]" likely related to medical bills. (*Id*., PageID.13.)

Plaintiff appears to claim that he has sought or received records from his attorney's office (presumably Andreopoulos & Hill), the Wayne County Circuit Court (the Register of Actions for Case No. 09-025727-NZ), the State Bar of Michigan, Michigan's AGC, and the "default insurance company" (presumably

Philadelphia Insurance Company).  (*Id*., PageID.11-12.)  However, there was no response from counsel or Michigan's AGC.  (*Id*., PageID.13.)

According to Plaintiff, his counsel's "past delinquent arbitration proposed settlement" was:  (1) $48,500 for the "default claim," which the Court presumes is related to Philadelphia Indemnity Insurance Company's resolution of the state court case; and, (2) $16,500 for the "offender's claim," which the Court presumes is related to Christopher Joseph Roebuck's resolution of the state court case.  (ECF No. 1, PageID.13.)  Plaintiff also seems to request that the U.S. Department of Justice "investigate insu[r]ance fraud payable to settle the July 13, 2012 offender's claim[.]"  (*Id*.)

Perhaps anticipating a statute of limitations defense to claims concerning the alleged July and December 2012 settlements, Plaintiff asks the Court to "toll his civil claim[,]" because:

> . . . he relied on affirmative representation of counsel's judiciary duty and obligation to uphold adequate standards by Michigan Rules of Professional Conduct at bar on his behalf and at present apply with d[i]ligence to pursue this claim on recovery to the damage sought of his extrinsic sur[g]eries and medical bills that ha[ve] been debt to his account.

(ECF No. 1, PageID.13.)

### 2.    Eleven of the law firm Defendants

The law firm Defendants' motion was filed on behalf of the law firm

Andreopoulos & Hill PLLC, attorney L. Louie Andreopoulos, attorney David T.

Hill, attorney Brian J. Wagner, attorney Fancy Yaldo-Hill, Sallykaye Rahn (a/k/a

SK Rahn), attorney David Ayyash, Kristina Brewert, Kyle Bryant, and Lynn

Czubay (ECF No. 48), but not on behalf of Mulder, who has only recently

appeared (ECF No. 81).  The law firm Defendants' argument is succinct:

> In reviewing Plaintiff's complaint for his civil case, there are no
> factual allegations contained therein to support any of the alleged
> conclusions or claims cited in the complaint.  The complaint only
> contains conclusory statements including breach of contract which
> exceeds "75K" and "punitive damages for fraud, forgery,
> misrepresentation, fiduciary obligation".  The statement of claims
> contains only that "Defendant settled both cases without my
> knowledge and consent on July 13, 2012 and December 2012".
> Despite having received the settlement disbursements, Plaintiff does
> not include any factual allegations underlying his conclusory
> statements set forth in his complaint.  Absent any factual allegations
> or proofs contained within the complaint, Plaintiff's complaint fails to
> state a claim upon which relief can be granted.  Even considering that
> Plaintiff is a *pro se* litigant and looking at the complaint and its
> contents in the light most favorable to Mr. Williams, there is a distinct
> absence of any facts contained in the complaint to support the
> conclusory and speculative statements for which Mr. Williams seeks
> relief.

(ECF No. 48, PageID.236.)

The Court should deny the law firm defendants' motion to dismiss.

Plaintiff's complaint identifies many of the Defendants as associated with the law

firm Andreopoulos and Hill, including attorneys, paralegals and staff.  (ECF No. 1,

PageID.2-6.)  While Plaintiff's *pro se* complaint is anemic in detail – *e.g.*, it does not list Plaintiff's state court case number – at a minimum, Plaintiff intended a breach of contract claim – if not also claims based on fraud, misrepresentation, professional malpractice and fiduciary duty – against the law firm Defendants with respect to the case or cases it settled "without [Plaintiff's] knowledge and consent" in July 2012 and December 2012.  (ECF No. 1, PageID.9.)  Elsewhere in the complaint, Plaintiff repeats these dates and alleges settlement amounts.  (ECF No. 1, PageID.12-13.)  Thus, it would not have been very difficult for the law firm Defendants to determine the case number in question, given its own records and/or the state court's search engine.  (*See* https://cmspublic.3rdcc.org/default.aspxit.)  More to the point, the complaint provides enough information for the law firm Defendants to have notice of the transaction in question.  Put another way, having reviewed the *operative pleading*, this Court does '"not have to guess at the nature of the claim asserted."'  *Frengler*, 482 F. App'x at 976-77.

Having arrived at this conclusion, the Court need not – and should not – consider whether any other filings "fill-in-the-blanks."  (*See*, *e.g.*, ECF No. 30 [Plaintiff's Affid.], ECF No. 21 [Motion to Compel Exhibits], ECF No. 67 [Plaintiff's Resp.].)  This is not a motion for summary judgment, where the Court considers matters outside of the pleadings.  Fed. R. Civ. P. 12(d); *see also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

13

Of course, if the law firm Defendants felt the complaint was "so vague or ambiguous that [they] [could not] reasonably prepare a response[,]" they could have – "before filing a responsive pleading" – pointed out "the defects complained of and the details desired" in a motion for a more definite statement. Fed. R. Civ. P. 12(e). Instead, because the law firm Defendants have not shown that Plaintiff's complaint "fail[s] to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), as to the claims against them, the Court should deny their motion to dismiss (ECF No. 48). It is clear to the Undersigned – and should be to these defendants – that Plaintiff is accusing the law firm and several of its employees of settling his underlying lawsuit without his authority, and in doing so, breaching legal obligations or duties owed to him.

### 3.    The AGC Defendants (Gershel and Bullington)

Alan Gershel was the Michigan AGC's Grievance Administrator, and Cynthia Bullington is the Michigan AGC's Assistant Deputy Grievance Administrator. (ECF No. 29, PageID.172; ECF No. 1, PageID.7.) Gershel and Bullington argue that Plaintiff's complaint fails "to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6), because it "is devoid of facts pertaining to Defendants Gershel and Bullington and consists of nothing but conclusions, opinions, and deductions." (ECF No. 29, PageID.170, 173.) Moreover, they contend that "Plaintiff has failed to allege how the conduct of Defendant Gershel

or Defendant Bullington has injured him[.]"  (ECF No. 29, PageID.173.)  (*See also* ECF No. 70, PageID.419-420.)

Although Plaintiff's complaint identifies Gershel and Bullington as Defendants (ECF No. 1, PageID.7), the substantive portions of the complaint contain multiple references to a request for action from or a failure to respond by the "grievance committee."  (ECF No. 1, PageID.11-13.)  In other words, "Plaintiffs Complaint is devoid of facts pertaining to Defendants Gershel and Bullington . . . ."  (ECF No. 29, PageID.173.)

While it is possible that Plaintiff's 34-page, handwritten response mentions Gershel or Bullington by name, and although it certainly mentions the "Michigan Bar Association and Grievance Committee" and the "Bar Committee" (*see*, *e.g.*, ECF No. 67, PageID.371, 378-379 and ECF No. 70, PageID.419), this Court must render its decision on the AGC Defendants' motion to dismiss on the face of the complaint.  *See* Fed. R. Civ. P. 12(d); *see also Bassett*, 528 F.3d at 430. Nonetheless, for Plaintiff's own enlightenment, but without converting this motion to dismiss to a motion for summary judgment, to the extent Plaintiff's claims against Defendants Gershel and Bullington are based upon any involvement they had with Plaintiff's requests for Michigan's AGC to investigate (ECF No. 21, PageID.84-85; ECF No. 67, PageID.399; ECF No. 77, PageID.460 [AGC File No. 18-1202]; (ECF No. 79, PageID.469 [AGC File No. 20-2428]), they are likely

immune from liability.  *See* M.C.R. 9.108(A) ("The Attorney Grievance

Commission is the prosecution arm of the Supreme Court for discharge of its

constitutional responsibility to supervise and discipline Michigan attorneys and

those temporarily admitted to practice under MCR 8.126 or otherwise subject to

the disciplinary authority of the Supreme Court."); *Eston v. Van Bolt*, 728 F. Supp.

1336, 1338 (E.D. Mich. 1990) (because "plaintiff's complaint directly relates to the

defendants' performance of their statutory duties as members of the Attorney

Discipline Board or the Attorney Grievance Commission[,]" defendants were

"immune from liability for acts or omissions performed in this official capacity.").

Defendants Gershel and Bullington should be dismissed, because Plaintiff has

failed to allege sufficient facts to state a legal claim against them.

### 4.      Defendant Diaz (and the Michigan Head and Spine Institute)

Defendant Diaz and his employer have filed an amended motion to dismiss

pursuant to Fed. R. Civ. P. 8(a)(2) and Fed. R. Civ. P. 12(b)(6).  (*Compare* ECF

No. 50, with ECF No. 35.)  Diaz and his employer allege that Diaz's "only

involvement with Williams was in 2009 and 2010 as a result of medical treatment

needed," and further allege that "[n]either Dr. Diaz nor Michigan Head and Spine

Institute had any involvement with the underlying lawsuits or settlement of the

lawsuits."  (*Id.*, PageID.242-243.)  Also, Defendant Diaz and his employer note

that the accident in question occurred in January 2009 – i.e., twelve years ago; thus, the three-year statute of limitations has expired.  Mich. Comp. Laws Ann. § 600.5805(2) ("Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property.").  (*Id.*, PageID.244.)

Here, the Court need only focus on the operative pleading.  Although Plaintiff's complaint identifies Dr. Diaz and/or the Michigan Head and Spine Institute as a Defendant or Defendants (ECF No. 1, PageID.6), the substantive portions of the complaint do not mention either the doctor or his employer (*id.*, PageID.11-13).  To be sure, Plaintiff's complaint refers to "sur[ge]ries," "medical bills," and "debt," as well as "insu[r]ance fraud."  (*Id.*, PageID.13.)  Yet, Diaz and the Michigan Head and Spine Institute are correct that "Plaintiff's Complaint is devoid of facts pertaining to Defendants Fernando Diaz, MD and Michigan Head and Spine Institute[,]" and that "Plaintiff does not allege any specific claims against Defendant Fernando Diaz, MD or Michigan Head and Spine Institute." (*Id.*, PageID.244.)  I agree that "no specific allegations are stated against" Defendant Diaz (*id.*, PageID.242) or, for that matter, his employer.  Thus, the complaint does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and "fail[s] to state a claim upon which relief can

17

be granted[.]"  Fed. Rules Civ. P. 8(a)(2), 12(b)(6).  (*Id.*, PageID.241, 243.)  Even

if Plaintiff provided detail about Diaz or his employer within his affidavit (*see*,

*e.g.*, ECF No. 13, PageID.49) or his 34-page, handwritten response (ECF No. 67,

PageID.357-390), motions to dismiss are decided on the face of the complaint.

This is not a motion for summary judgment, where the Court considers matters

outside of the pleadings.  Fed. R. Civ. P. 12(d); *see also Bassett*, 528 F.3d at 430.

Defendant Diaz (and the Michigan Head and Spine Institute) should be dismissed,

because Plaintiff has failed to state a claim against them.  It is also hard to image

how the time for doing so has not long ago expired.

### 5.      Defendant Colombo

On January 8, 2021, in lieu of a responsive pleading, Defendant Colombo

filed two – apparently duplicative – motions to dismiss pursuant to Fed. R. Civ. P.

12(b)(6).  (ECF Nos. 53, 55.)  Within his simultaneously-filed brief in support,

Defendant Colombo contends that:  (1) Plaintiff's complaint does not comply with

Fed. R. Civ. P. 8(a)(2), because it "is devoid of facts pertaining to Judge Colombo .

. . [;]" and, (2) to the extent Plaintiff's claim "is based upon actions, albeit

unspecified, taken by Judge Colombo in his capacity as Chief Judge or as a Judge

presiding over a particular case[,]" Plaintiff's claim "is barred by the doctrine of

absolute judicial immunity."  (ECF No. 54, PageID.276-278.)

Although Plaintiff's complaint identifies Judge Colombo as a Defendant (ECF No. 1, PageID.7), the substantive portions of the complaint refer to a request for a Register of Action(s) or settlement information from "the court[][,]" (ECF No. 1, PageID.11-12), and a request that *this Court* toll the civil claim (*id.*, PageID.12-13).  In other words, "Plaintiff's Complaint is devoid of facts pertaining to Judge Colombo . . . ."  (ECF No. 54, PageID.277.)  Even if Plaintiff's affidavit (ECF No. 13, PageID.48-52) or his 34-page, handwritten response (ECF No. 67, PageID.357-390) mentioned Judge Colombo, whose reply explains that he did not preside over Case No. 09-025727-NZ and that he "was not appointed to serve as Chief Judge of the Wayne County Circuit Court until 2014."  (ECF No. 68, PageID.412-413.)  These points are confirmed by matters that are publicly available on the Third Judicial Circuit of Michigan's website.  (*See* https://cmspublic.3rdcc.org/ [Register of Actions, Case No. 09-025727-NZ], https://3rdcc.org/files/newsletters/201901-3rdcc-eNewsLetter.html [January 2019 Newsletter]), of which this Court takes judicial notice under Fed. R. Evid. 201. *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as

they are referred to in the Complaint and are central to the claims contained therein.").

Thus, Judge Colombo appears to be correct that he "had no active participation, or passive participation as Chief Judge, in Plaintiff Williams' Wayne County Circuit Court case[,]" (*id.*), the last entry for which occurred in 2013.  And – while this Court decides motions to dismiss based on the face of the complaint (Fed. R. Civ. P. 12(d); *see also Bassett*, 528 F.3d at 430) – to the extent Plaintiff's claims against Judge Colombo concern the May 4, 2018 letter from the judge's clerk (ECF No. 21, PageID.79) or the "power of attorney" granted to Judge Colombo (ECF No. 13, PageID.51; ECF No. 67, PageID.397), he would undoubtedly be entitled to immunity.  *Pierson v. Ray*, 386 U.S. 547, 553-554 (1967) ("Few doctrines [are] more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . .").

## F.    Conclusion

Plaintiff points out that the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).  (ECF No. 67, PageID.358.)  In what can best be described as a prayer for relief, Plaintiff's response requests, *inter alia*, that the Court:  (1) grant summary

judgment in his favor; (2) allow full disclosure of discovery materials and facts; (3) set this case for trial; and, (4) enter a scheduling order compelling disclosures and discovery. (ECF No. 67, PageID.390.) However, for the reasons stated above, the Court should **DENY** the pending motion to dismiss filed by the law firm Defendants (ECF No. 48) but **GRANT** the other Defendants' pending motions to dismiss (ECF Nos. 29, 35, 50, 53, 55). Furthermore, Plaintiff is not entitled to summary judgment in his own favor, and moving forward with a scheduling order or discovery is best done once all of the Defendants Plaintiff chose to name in this lawsuit have been served and appeared and the Court decides the predictably large number of dismissal motions to be filed. Plaintiff might move this case forward more quickly if he re-evaluated what his case is really about and who the proper parties really are *and* voluntarily dismissed those defendants whose actions have either not caused his alleged harm or who are only peripherally involved in this matter.

## III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  May 26, 2021          s/*Anthony P. Patti*
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE